NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1115


JAMES E. LANDRY, ET AL.

VERSUS

LONESTAR CORROSION SERVICES, INC.

**********


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 05-C-5968-D
HONORABLEDONALD WAYNE HEBERT, DISTRICT JUDGE

**********


ELIZABETH A. PICKETT
JUDGE

**********


Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.


AFFIRMED.


Gerald Charles deLaunay
Perrin, Landry, deLaunay, Dartez & Ouellet
P. O. Box 53597
Lafayette, LA 70505
(337) 237-8500
  Counsel for Defendant-Appellee:
  Lonestar Corrosion Services, Inc.

Steven Gerald Durio
Robert Louis Broussard
Durio, McGoffin, Stagg & Ackermann
P. O. Box 51308
Lafayette, LA 70505-1305
(337) 233-0300
  Counsel for Plaintiffs-Appellants:
  James E. Landry
  D. Patrick Keating

**PICKETT, Judge.**

The plaintiffs, James Landry and D. Patrick Keating, appeal a judgment of the trial court which denied their petition for specific performance or damages pursuant to a purchase agreement with Lone Star Corrosion Services, Inc.

## STATEMENT OF THE CASE

In June 2005, Glen Cronin, owner of Lone Star Corrosion Services, Inc. (Lone Star), learned that the owners of Thermal Coatings Technology, LLC (Thermal) might be interesting in selling the company. Specifically, Cronin was interested in Thermal's license to apply Sermaguard in Louisiana. Cronin and Jimmy Landry, one of the owners of Thermal, discussed the sale of the company. Cronin requested financial information from Thermal so he could value the company with the goal of acquiring it. He discussed with Landry the license Thermal held to apply Sermaguard, which Cronin understood to be an exclusive right to apply the coating in Louisiana.

A meeting was set up on September 6, 2005, with Cronin, Landry and D. Patrick Keating, the other owner of Thermal. Keating, an attorney, had drawn up an Option to Purchase for Cronin to sign. At this meeting, Cronin stated that he did not want to sign an option. Instead, he wanted to sign a purchase agreement with a financing condition. Mr. Keating agreed to revise the document and presented it for Mr. Cronin's signature later that day. In pertinent part, the agreement stated:

> Subject to the terms and conditions set forth herein, Lone Star Corrosion Services, Inc. agrees to purchase and Lames E. Landry and D. Patrick Keating agrees [sic] to sell all of their right, title and interest in and to Thermal Coating Technologies, LLC.

> It is agreed by the parties to this agreement that Lone Star Corrosion Services, Inc. will pay to James E. Landry, D. Patrick Keating and Thermal Coating Technologies, LLC the total sum of $250,000.00.

1

This sale is contingent upon Lone Star Corrosion Services, LLC obtaining permanent financing from an approved lender.

Lone Star Corrosion Services, LLC has paid the sum of $10,000.00to James E. Landry and D. Patrick Keating, receipt of which is hereby acknowledged.

An Act of Sale, as contemplated by this agreement, shall be passed on or before October 31, 2005. If the Act of Sale is passed on or before October 31, 2005, the $10,000.00 cash paid shall be applied to the purchase price of $250,000.00 and the remaining balance shall be paid at the time of passing of the Act of Sale. In the event an Act of Sale is not passed on or before October 31, 2005, Lone Star Corrosion Services, Inc. shall have no right or claim whatsoever to the $10,000.00 paid, or any part thereof, which payment shall become the property of Thermal Coating Technologies, LLC as liquidated damages.

It is further understood and agreed that time is of the essence of this contract and that all rights granted to Lone Star Corrosion Services, Inc. pursuant this agreement shall cease and terminate if an Act of Sale is not passed on or before October 31, 2005.

The document was signed by Cronin, as representative of Lone Star, and Landry and Keating on September 6, 2005. Cronin visited some of Thermal's customers with Landry, began to try to secure financing for the purchase, and evaluated the assets of Thermal. Additionally, he and Landry discussed finding a new rental space for Thermal, as its lease would be up in December and would not be renewed.

By October 31, 2005, the sale had not been finalized. Cronin argues that he became aware of the debt owed by Thermal, both to a bank and to the IRS for back payroll taxes. He also stated that he found out that Thermal's licensing agreement for Sermaguard was not exclusive as represented by Landry and Keating. Cronin believed that Thermal was the only company allowed to apply Sermaguard in the area. Landry and Keating argued that they never represented that they were the only company allowed to apply Sermaguard in the area. Instead, they stated that their

understanding of "exclusive" was that they had the expertise to apply the product and the makers of the product would only sell the raw materials to them because of the training their employees had received. They claim they never represented that another company could not receive the same training and do the same work.

Cronin, Keating, and Landry met on November 16, 2005 in Lafayette. At that meeting, Cronin offered to pay an additional $75,000.00 for the purchase of Thermal. Keating and Landry were unhappy with the offer, and told Cronin that he had agreed to pay $250,000.00. They were concerned that $75,000.00 was not enough to pay Thermal's creditors. The meeting was adjourned for Landry and Keating to consider the offer. The parties met again on November 24, 2005. At that meeting, Landry and Keating told Cronin that they felt the Purchase Agreement was enforceable and that they expected him to honor its terms. Cronin refused.

On December 14, 2005, Landry and Keating filed this suit, seeking specific performance under the purchase agreement and damages. Lone Star filed an answer and reconventional demand, seeking return of its $10,000.00 deposit. A bench trial was held on January 31, 2007. The trial court denied the main demand and the reconventional demand in Reasons for Judgment filed on February 21, 2007. A judgment in conformity with those reasons was signed on March 5, 2007. On March 14, 2007, Landry and Keating filed a motion for a new trial, seeking to present new evidence to the court. Following a hearing on March 28, 2007, the trial court denied the motion for a new trial by judgment signed April 5, 2007. Landry and Keating have appealed the judgment.

3

## ASSIGNMENTS OF ERROR

Landry and Keating, plaintiffs-appellants, assert five assignments of error:

1. The court erred in finding the contract was drafted by the plaintiff as the drafter under [Civil Code] Article 2056 in the face of clear and uncontradicted evidence that its final, definitive changes were requested by the defendant.

2. The lower court erred by applying the presumptions of [Civil Code] Articles 2056 and 2057 despite their expressly limited application to cases involving "a doubt which cannot be otherwise resolved," and in spite of overwhelming evidence under Article 2053 removing any such doubt at trial.

3. The court erred in finding that damages stipulated in the event the buyer did not close by a certain date were not stipulated for "mere delay."

4. The court erred in finding that the deposit operated as "earnest money" even though it was not "expressly provided" as such, and despite the intention of the parties to make the agreement specifically enforceable.

5. The court erred in denying new trial for the introduction of documentary admissions which contradicted defendant's statements at trial.

The defendant-appellee, Lone Star, has alleged three assignments of error. We will not address these assignments, as the record does not show that Lone Star either filed an appeal or answered the appellants' appeal. La.Code Civ.P. art. 2133. *See also Matthews v. Consolidated Companies, Inc.*, 95-1925 (La. 12/8/95), 664 So.2d 1191.

## DISCUSSION

We must begin our analysis of this case with the general rules of contract interpretation. "If the words of a contract are clear, explicit, and lead to no absurd results, it must be interpreted by reference to the 'four corners' of the document and no further interpretation can occur in search of the parties' intent." *Hebert v. Ins.*

4

*Center, Inc.*, 97-298 p. 4 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1011, *writ denied* 98-353 (La.3/27/98), 716 So.2d 888;  La.Civ.Code art. 2046.

Here, the trial court found that the words of the contract were not clear and explicit.  The trial court found the following paragraphs were subject to different meanings:

> An Act of Sale, as contemplated by this agreement, shall be passed on or before October 31, 2005.  If the Act of Sale is passed on or before October 31, 2005, the $10,000.00 cash paid shall be applied to the purchase price of $250,000.00 and the remaining balance shall be paid at the time of passing of the Act of Sale.  In the event an Act of Sale is not passed on or before October 31, 2005, Lone Star Corrosion Services, Inc. shall have no right or claim whatsoever to the $10,000.00 paid, or any part thereof, which payment shall become the property of Thermal Coating Technologies, LLC as liquidated damages.

> It is further understood and agreed that time is of the essence of this contract and that all rights granted to Lone Star Corrosion Services, Inc. pursuant this agreement shall cease and terminate if an Act of Sale is not passed on or before October 31, 2005.

Landry and Keating argue that the because the contract wording was changed from an Option to Purchase to a Purchase Agreement with a financing condition at the insistence of Cronin, Lone Star is required to complete the purchase at the agreed upon price of $250,000.00 and is no longer entitled to a credit of $10,000.00.  Cronin argues that the $10,000.00 may have been forfeited by the failure to finalize the sale by October 31, 2005, but he is not obligated to pay the full purchase price.  We agree that the contract is not clear on its face and is susceptible to different meanings and that the trial court was correct to look outside the four corners of the document to ascertain the intent of the parties.

The trial court relied on La.Civ.Code art. 2056 to construe the terms of the contract against Keating and Landry, since Keating drafted the original document and made the changes requested by Cronin.  Article 2056 states:

5

> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
>
> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

In their first two assignments of error, Keating and Landry argue that the trial court erred in applying this article. In their second assignment of error, they argue that the trial court should have analyzed this case under the provisions of La.Civ.Code art. 2053 before resorting to Articles 2056 or 2057. Article 2053 states:

> A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

The trial court heard testimony from all the parties involved. While the evidence suggests that Cronin wished to be bound by more than just an option, the contract language suggests that if a sale was not finalized by October 31, 2005, the damages provision would apply. The contract is not clear about the nature of the damage provision. Furthermore, the trial court heard testimony that the information given to Cronin by Landry and Keating leading up to the signing of the contract on September 6, 2005, was incomplete at best and intentionally misleading at worst.

Finally, the language of the contract also stated that any rights Lone Star had under the contract ceased if the sale was not finalized by October 31, 2005. This clause in itself creates an ambiguity, as Lone Star no longer had the right to purchase Thermal and could not force Keating and Landry to sell but had the obligation to buy Thermal, according to Keating and Landry. We find that the trial court did not err in turning to Articles 2056 and 2057 to determine the intent of the parties.

Having determined that the trial court did not err in using La.Civ.Code art. 2056 to determine the intent of the parties, we now address the appellants' first

6

assignment of error. They argue that the trial court should not have interpreted the contract against Keating and Landry as the drafters of the contract because Cronin requested the language changes which have caused this dispute. This argument ignores the text of the article. The first sentence of Article 2056 states that a contract "must be interpreted against the party who furnished its text." The testimony was clear that the only person who drafted the document was Keating. While he made changes to the contract at Cronin's insistence, Keating actually chose the wording to use in amending the contract. We find no manifest error in the trial court's finding.

We further find the trial court did not err in finding that the intent of the parties was that the $10,000.00 payment was to be forfeited as damages in lieu of the right to seek specific performance rather than for mere delay. As discussed above, the terms of the contract were ambiguous in this regard, and the trial court resorted to codal provisions to determine the issue in favor of the Lone Star. Thus, we find no merit in the appellants' third assignment of error.

Likewise, the trial court never described the $10,000.00 as "earnest money." The trial court was required to determine the intent of the parties in a poorly drafted contract. We find no manifest error in his determination. We base this finding not only on the testimony presented at trial on the issue of the meaning of the contract, but also on the conduct of the appellants in their (mis)representations to Cronin leading up to the signing of the contract. The trial court, pursuant to Article 2053, clearly can resort to equity in making its decision.

In its final assignment of error, the appellants argue the trial court should have granted a new trial because they discovered new evidence after the trial. The appellants tried to introduce e-mails obtained from a customer of Thermal sent by

Cronin to the customer in which Cronin allegedly stated his intent to purchase Thermal. They argue that this evidence was not available to them before the trial, and thus a new trial must be granted pursuant to La.Code Civ.P. art. 1972(B), which states:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

The trial court found that the e-mails could have been discovered before trial in the exercise of due diligence. The man who supplied the e-mails was a witness at trial and knew the nature of this dispute. We agree and will not disturb that finding. The trial court went on to state that even if the e-mails were allowed, it found them "cumulative and redundant." We find the trial court did not abuse its broad discretion in denying the motion for a new trial. *Henderson v. Sellers*, 03-747 (La.App. 3 Cir. 12/17/03), 861 So.2d 923.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. All costs in this matter are assessed to the appellants, James Landry and D. Patrick Keating.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.